UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | 23-mj-16105-JRA |
| v. | **OPINION** |
| JUAN HERRERA-QUINO and VANESSA CUEVAS-BELTRE | |

**José R. Almonte, U.S.M.J.**

Defendant Juan Herrera-Quino was arrested and charged by complaint with a narcotics offense. After this Court ordered Herrera-Quino's release pursuant to the Bail Reform Act of 1984 ("Bail Reform Act"), 18 U.S.C. §§ 3141–3156, United States Immigration and Customs Enforcement ("ICE") lodged a detainer against Herrera-Quino, ultimately culminating with immigration authorities ordering his deportation. The United States Attorney's Office ("Government") now urges the Court to revoke its order of release because ICE will deport Herrera-Quino prior to trial if he is released from the custody of the U.S. Marshals Service. This Court holds that, under the specific circumstances of this case, an order of removal by immigration authorities, without more, is insufficient to deny a defendant bail pursuant to the Bail Reform Act. Having previously found, with the Government's consent, that there are conditions of release that would reasonably assure Herrera-Quino's appearance in court and the safety of the community, and the Government having not presented any other evidence to support detention, the Court finds that

1

the Government has not met its burden of proof. Therefore, this Court will reinstate its order of release.

## I. BACKGROUND

Herrera-Quino and Vanessa Cuevas-Beltre are in the United States without legal immigration status. On October 11, 2023, they were arrested and charged with a narcotics offense, in violation of 21 U.S.C. § 846. ECF No. 1. The next day, Herrera-Quino was brought to this Court for his initial appearance, at which time he consented to detention. ECF No. 4. He then requested a bail hearing, which was held on October 25, 2023. ECF No. 14. During the hearing, he proposed conditions of release, including home detention with electronic GPS monitoring. ECF Nos. 18, 38. The Government expressly consented to these terms and presented no evidence or arguments regarding Herrera-Quino's risk of flight or danger to the community. *Id.* The Court adopted the proposal and issued an order of release (the "October 25, 2023 Release Order"). ECF No. 18.

Before Herrera-Quino was released to home confinement, ICE issued an immigration detainer, requiring his transfer from the custody of the U.S. Marshals Service to ICE.[1] In response, this Court issued an arrest warrant to ensure that there would be a proper mechanism by which Herrera-Quino would not be deported without notice to this Court and the Government. ECF Nos. 22, 30 at 2. On November 14, 2023, the Court held oral argument to reconsider the issuance of the warrant. ECF

---

[1] The Government also consented to the release of Cuevas-Beltre and did not present any evidence that she is a flight risk or a danger to the community. Her bail conditions are identical to those imposed on Herrera-Quino. ECF No. 15. Cuevas-Beltre remains released on bail.

2

No. 29. The Court denied Herrera-Quino's request, concluding that "if ICE releases [Herrera-Quino] on bail, this Court's previously imposed conditions will be reinstated unless the government shows changes in circumstances[.]" ECF No. 30 at 2.

On November 21, 2023, the Honorable Adrian Armstrong, United States Immigration Judge, ordered Herrera-Quino's removal from the United States to the Dominican Republic. ECF No. 38 at 8. Herrera-Quino waived his right to appeal that order. *Id*. at 9. In response to the arrest warrant issued by this Court, Herrera-Quino was transferred from ICE custody back to the U.S. Marshals Service. On December 13, 2023, Herrera-Quino filed a one-page letter, styled as a motion, requesting his release under the original bail conditions. ECF No. 32. On December 20, 2023, this Court held oral argument, at which point it became evident that briefing was necessary to determine whether the immigration judge's final order of removal required that Herrera-Quino remain detained pending trial in this case. ECF Nos. 35, 36. The issue was fully briefed by January 10, 2024, at which time the Government informed the Court that ICE had denied its request to stay the removal order based on ICE's determination that Herrera-Quino presented a flight and public safety risk. ECF No. 40. The Government explained, "should [Herrera-Quino] be released with respect to the above-referenced criminal matter, ICE <u>will</u> arrest [him] and deport him to the Dominican Republic in short order, pursuant to the existing Order of Removal." *Id*. at 2 (emphasis in original).

## II. LEGAL STANDARD

Once a defendant is charged with a crime, the Court has authority to hold a detention hearing prior to trial only under the limited circumstances outlined in 18 U.S.C. §§ 3142(f)(1) and (2). Some of those circumstances include situations in which a defendant has been charged with specific narcotics offenses, § 3142(f)(1), or in which there is "a serious risk that [a defendant] will flee," § 3142(f)(2)(A). *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986); *United States v. Watkins*, 940 F.3d 152, 158 (2d Cir. 2019); *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017). If the Court determines that a detention hearing is warranted, the Government's burden of proof hinges on which argument it advances.

If, pursuant to § 3142(e), the Government argues that the defendant is a danger to another person or the community, the Government must meet its burden by clear and convincing evidence. § 3142(f). If, on the other hand, the Government argues that a defendant is a risk of flight, it must meet its burden by a preponderance of the evidence. *See Himler,* 797 F.2d at 161. Regardless of which argument the Government makes, Congress "requires the pretrial release of defendants *unless 'no condition or combination of conditions* will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *United States v. Soriano Nunez*, 928 F.3d 240, 244 (3d Cir. 2019) (emphasis added) (quoting § 3142(e)(1)). In assessing a person's risk of flight or dangerousness, the Court must consider various factors, including the (1) nature and circumstances of the offense charged, (2) weight of the evidence, (3) person's history and characteristics, and (4) "nature and seriousness of the danger to any person or the community that would be

posed by the person's release." § 3142(g).  Certain of these categories require more in-depth individualized analyses.  For example, when considering the history and characteristics of the person, courts can analyze "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." § 3142(g)(3)(A).

In circumstances enumerated in Section 3142(e), there is a rebuttable presumption in favor of detention.  One such circumstance arises when there is probable cause to believe that the defendant committed a controlled substance offense that carries a maximum sentence of ten years or more.  § 3142(e)(3)(A).  That presumption does not end the analysis.  To rebut the presumption, "[t]he defendant must produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) (citation omitted).  Once the defendant satisfies the burden of production, the Government must meet its burden of persuasion, *United States v. Perry*, 788 F.2d 100, 114–15 (3d Cir. 1986), that is, it must establish risk of flight by a preponderance of the evidence or dangerousness by clear and convincing evidence.

At no point should the Section 3142 analysis "be construed as modifying or limiting the presumption of innocence." § 3142(j).  A person without legal immigration status in the United States who is charged with a federal crime is not

5

deprived of the protections afforded under the Bail Reform Act. There is one exception. Courts may temporarily detain such persons "so that immigration and other officials can take custody of such individuals before . . . conditions of release are set." *Soriano Nunez*, 928 F.3d at 244. The plain language of the Bail Reform Act is important:

> If the [immigration] official fails or declines to take such person into custody during that period, *such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings.*

§ 3142(d) (emphasis added). As the Third Circuit has stated, "[o]ther than during this temporary detention period, individuals on release arising from other offenses and non-citizens are treated the same as other pretrial criminal defendants under the [Bail Reform Act]." *Soriano Nunez*, 928 F.3d at 244–45. That is not to say that courts should ignore a defendant's immigration status when assessing that person's risk of flight. That is a factor that courts can and should consider. *See, e.g.*, *United States v. Abdullahu*, 488 F. Supp. 2d 433, 445 (D.N.J. 2007) (considering the risk of deportation, among other factors, in Bail Reform Act analysis). However, "the presence of an ICE detainer and the threat of potential removal alone are not sufficient to deny [Bail Reform Act] pretrial release." *Soriano Nunez*, 928 F.3d at 245 n.4 (citation omitted) (dicta); *see also United States v. Lett*, 944 F.3d 467, 469 (2d Cir. 2019) (holding "that immigration authorities may lawfully detain a criminal defendant ordered to be released under the [Bail Reform Act]"); *Ailon-Ailon*, 875 F.3d at 1338 (concluding that the Bail Reform Act does not bar the release of a defendant

6

just because he is a deportable alien); *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015) (stating that the possibility of deportation cannot be the sole basis to deny release under the Bail Reform Act).

### III. ANALYSIS

During the initial detention hearing, the Government did not dispute that there were conditions of release that would reasonably assure Herrera-Quino's appearance in court and the safety of others and the community. That much was clear when the Government consented to release Herrera-Quino under certain conditions, including home confinement with electronic monitoring.[2] ECF No. 38 at 2. The Government's sole concern is that if Herrera-Quino is released from the custody of the U.S. Marshals Service—under the conditions that the Government previously agreed were reasonable—ICE will deport Herrera-Quino prior to trial because now there is a final order of deportation, not just the threat of it.[3] For reasons explained below, the Court is not convinced that such a development, without more, is sufficient to find that the Government has satisfied its burden of proof.

As a preliminary matter, it is important to understand the intersection between immigration laws and the Bail Reform Act. "[D]etention of a criminal defendant pending trial pursuant to the [Bail Reform Act] and detention of a

---

[2] The Government mentions in passing for the first time that this case gives rise to a rebuttable presumption in favor of detention. ECF No. 38 at 4–5. That is true. And Herrera-Quino does not dispute that. But that is not a new fact, nor is it the end of the analysis. The Government, which filed the charges, was fully aware of the rebuttable presumption when it consented to Herrera-Quino's release and acknowledged that there are conditions of release that would reasonably assure his appearance and the safety of the community. ECF No. 38.

[3] The Government has never presented any arguments regarding Herrera-Quino's dangerousness.

removable alien pursuant to the [Immigration and Nationality Act, 8 U.S.C. § 1101 et seq., ("INA")] are separate functions that serve separate purposes and are performed by different authorities." *Soriano Nunez*, 928 F.3d at 245–46 (quoting *United States v. Vasquez-Benitez*, 919 F.3d 546, 552 (D.C. Cir. 2019)). In a criminal case, courts carry out their duty under the Bail Reform Act "without regard to whether a separate entity with different duties may reach a different conclusion." *Id.* at 246. The focus of Section 3142 of the Bail Reform Act is to reasonably assure the defendant's appearance in court and the safety of others while trial is pending. "In an immigration case, those authorities are focused on enforcing the immigration laws and nothing in the [Bail Reform Act] prevents them from acting pursuant to their lawful duties, which include detaining aliens for removal purposes." *Id.* (citation omitted). These laws "can coexist." *Id.*; *see also Lett*, 944 F.3d at 471 ("The [Bail Reform Act] and the INA authorize the government to pursue both criminal prosecution and removal simultaneously, and there is no conflict between the detention-and-release provisions of the two statutes."). Therefore, when defendants do not have legal immigration status in the United States, district courts can release them under the Bail Reform Act, but ICE can still detain them for its own purposes. *Soriano Nunez*, 928 F.3d at 247 (holding that "the [d]istrict [c]ourt correctly declined to hold that [the defendant's Bail Reform Act] release order mandated her release from ICE detention"); *Lett*, 944 F.3d at 469 ("The district court's bail release order under the [Bail Reform Act] thus did not preclude the government from detaining [the defendant] pursuant to the INA as an inadmissible alien subject to removal.").

8

District courts are split on whether the risk that ICE will remove a defendant prior to trial is sufficient to deny bail under the Bail Reform Act. *See Ailon-Ailon*, 875 F.3d at 1337 (comparing district court decisions). Indeed, the Government has cited to several cases to argue that detention is justified in instances where there is a surety of deportation. *See* ECF No. 38 at 4, 4 n.2. Those cases, however, either have been rejected or not considered by Courts of Appeals. *See, e.g., Ailon-Ailon*, 875 F.3d at 1337 (rejecting the approach of *United States v. Ong*, 762 F. Supp. 2d 1353, 1363 (N.D. Ga. 2010) and *United States v. Pantaleon-Paez*, No. 07-cr-292, 2008 WL 313785, at *4 (D. Idaho Feb. 1, 2008), on which the Government relies here). And, crucially, in none of the cases that the Government cited did courts rely ***only*** on the existence of an ICE detainer or final removal order when entering their orders of detention. *See* ECF No. 38 at 4, 4 n.2.[4]

The Tenth Circuit, on the other hand, has addressed an argument nearly identical to the one the Government advances in this case—that the defendant should be detained because if he is released on bail in the criminal case "he would be removed

---

[4] Indeed, in some of the cases upon which the Government relies, the courts concluded that the defendant posed a risk of danger to the community. *See Pantaleon-Paez*, 2008 WL 313785, at *2–3 (detaining the defendant on the basis of danger to the community and, as an alternative basis, because no conditions of release could be imposed to ensure his appearance); *United States v. Campos*, No. 10-mj-6, 2010 WL 454903, at *4 (M.D. Ala. Feb. 10, 2010) (granting detention on two bases, risk of flight and safety of the community); *United States v. Vencomo-Reyes*, No. 11-cr-2563, 2011 WL 6013546, at *14 (D.N.M. Nov. 28, 2011) (same). In other cases, courts have found that, although forced deportation ordinarily might be involuntary, a defendant who expressly desires or seeks out deportation may be considered a flight risk. *See United States v. Lozano*, No. 09-cr-158, 2009 WL 3052279, at *5 (M.D. Ala. Sept. 21, 2009) (finding that because the defendant expressly desired to be deported, deportation could be construed as a voluntary flight); *Campos*, 2010 WL 454903, at *4 (same). And in other cases, courts affirmatively noted that it was not clear that, "in the absence of the immigration issue, there would have been no detention." *United States v. Sanchez-Valdivia*, No. 08-cr-342, 2008 WL 5104688, at *3 (D. Minn. Nov. 26, 2008); *see also Campos*, 2010 WL 454903, at *4 n.4 (finding that even in the absence of an ICE detainer, the defendant "would not merit release because of his criminal history and the other reasons outlined by this Court").

9

from the country by ICE before trial . . . because he is subject to a reinstated order of removal [and] ICE would be obligated to remove him within ninety days." *Ailon-Ailon*, 875 F.3d at 1336. In *Ailon-Ailon*, ICE lodged a detainer against a defendant charged by the Government with illegal reentry. *Id.* Notwithstanding the existence of an immigration detainer, the magistrate judge granted bail, but the district judge reversed that decision. *Id.* The Tenth Circuit reversed the district judge, holding "that, in the context of § 3142(f)(2), the risk that a defendant will 'flee' does not include the risk that ICE will involuntarily remove the defendant." *Id.* at 1339. In reaching that conclusion, the Tenth Circuit analyzed the plain language of the statute and considered the framework of the Bail Reform Act. *Id.* at 1337–39. Adopting the defendant's logic, the Tenth Circuit reasoned that "one would not describe an individual who has been arrested at a crime scene and involuntarily transported to a police station as having fled the scene." *Id.* at 1338. The Tenth Circuit also explained that the potential absence of the defendant at trial was a problem of the Executive Branch's own creation because ICE "may temporarily prevent an alien from leaving the country 'if his departure would be prejudicial to the interests of the United States,'" such as when he "is needed in the United States as a witness in, or as a party to, any criminal case under investigation or pending in a court." *Id.* at 1339 (citing 8 C.F.R. §§ 215.2(a), 215.3(g)). Therefore, "[t]he problem here is not that defendant will absent himself from the jurisdiction, but that two Article II agencies will not coordinate their respective efforts . . . . It is not appropriate for an Article III judge

10

to resolve Executive Branch turf battles." *Id.* (quoting *United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1111 (D. Minn. 2009)) (citations omitted).

The holding and reasoning of the Tenth Circuit, while not binding, applies with equal force here.[5] And although the Third Circuit has not expressly addressed the issue presently before this Court, its interpretation of the Bail Reform Act is instructive and worth repeating: "Other than during this temporary detention period [allowed under Section 3142(d)], individuals on release arising from other offenses and non-citizens are treated the same as other pretrial criminal defendants under the [Bail Reform Act]." *Soriano Nunez*, 928 F.3d at 244–45. Were this Court to adopt the Government's argument, it would have to ignore the plain language of the Bail Reform Act, the Third Circuit's instructions, and other Courts of Appeals' analyses. The result would be that the Bail Reform Act's "'carefully crafted detention plan . . . would simply be overruled by an ICE detainer,' precluding 'any kind of

---

[5] Just like here, in *Ailon-Ailon* the defendant's deportation was certain; after all, he had been deported once before and, according to the Government, he had to be deported again within ninety days. *Id.* at 1136. The fact that Herrera-Quino faces a narcotics charge, and the defendant in *Ailon-Ailon* faced an illegal reentry charge does not diminish the analogousness of the two cases. In *Ailon-Ailon*, the Tenth Circuit quotes from *Barrera-Omana*, 638 F. Supp. 2d at 1111–12, in which the defendant was released on bail after being charged with possession with intent to distribute approximately one kilogram of cocaine, despite the existence of an ICE detainer. In the years since *Ailon-Ailon* was decided, other district courts have applied its logic to Bail Reform Act analyses concerning defendants charged with drug offenses. *See United States v. Solis*, 453 F. Supp. 3d 1161 (S.D. Iowa 2020) (affirming order to release a defendant charged with conspiracy to distribute methamphetamine, despite the existence of an ICE detainer); *United States v. Holguin-Correa*, No. 19-cr-00416, 2020 WL 2085268, *3 (D. Utah Apr. 29, 2020) (finding that an ICE detainer, alone, did not make defendant— who was indicted and charged with possession of heroin with intent to distribute and carrying a firearm during a drug trafficking crime—a risk of fleeing or failing to appear). Of course, there will be cases in which a defendant who is charged with a narcotics offense will be ineligible for bail, but that decision will require an individualized analysis of the factors under Section 3142(g), rather than a categorical determination.

11

individualized consideration of a person before the Court.'" *Ailon-Ailon*, 875 F.3d at 1338 (quoting *Barrera-Omana*, 638 F. Supp. 2d at 1111) (citations omitted).

With this guidance in mind, it is clear to this Court that the risk of non-appearance at trial referenced in Section 3142 requires evidence of a defendant's volition—that is, that there is a risk that he will "flee" because of his own actions, not because of ICE's decision to remove him from the United States prior to trial. *Ailon-Ailon*, 875 F.3d at 1337 (agreeing with cases requiring a showing of a defendant's volition); *Santos-Flores*, 794 F.3d at 1091 ("[T]he risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition."); *United States v. Storme*, 83 F.4th 1078, 1083 (7th Cir. 2023) ("'[F]light' connotes an intentional act by a defendant to evade criminal prosecution by leaving the jurisdiction."). The Government, which previously consented to Herrera-Quino's release, has not presented *any* evidence of volitional acts to establish risk of flight by a preponderance of the evidence, other than the final order of removal and ICE's decision to deport. The only argument the Government presents is that Herrera-Quino acted with volition to avoid a trial because he "voluntarily waived his right to appeal the final order for removal, likely because he would rather be removed than face prosecution and any resulting prison sentence for violating the drug laws of the United States." ECF No. 38 at 5. That reasoning, however, is not persuasive. Herrera-Quino represents to this Court that such an appeal would be "frivolous." ECF No. 39 at 5. The Government has not identified any basis on which Herrera-Quino—who admittedly is not in the United States legally and is facing a narcotics charge—could have appealed the order of

12

removal. The Court will not deny Herrera-Quino bail just because he did not appeal the immigration court's decision. Failure to appeal that decision does not establish volition on his part. *See United States v. Lopez*, No. 23-cr-10269, 2023 WL 8039318, at *5 (D. Mass. Nov. 20, 2023) (finding that there was no ground to revoke the defendant's bail conditions where, after bail conditions were set, ICE obtained an order of removal, and the defendant did not appeal).

The Court is mindful that neither it nor the Government has "the authority to compel another sovereign or judge in federal administrative proceedings to release or detain a defendant." *Soriano Nunez*, 928 F.3d at 246. However, the Court is doubtful that ICE's only option is to deport Herrera-Quino prior to trial. *See Ailon-Ailon*, 875 F.3d at 1339 (citing to regulations preventing voluntary departure of individual without legal immigration status); *Soriano Nunez*, 928 F.3d at 247 (holding that a district court's release order under the Bail Reform Act did not require that the same defendant be released from ICE's detention while the criminal trial was pending). The Government has not cited to any legal authority showing that ICE *must* deport Herrera-Quino immediately, only that it has *chosen* to do so.[6] The decision to deport Herrera-Quino prior to trial is exclusively within the discretion of the Executive Branch, the same branch that oversees both the Government and ICE. If the

---

[6] The Government states that "[u]nlike with the lodging of a discretionary ICE detainer, a formal order of removal issued by a United States Immigration Judge requires ICE officials to immediately deport the subject of said order." ECF No. 38 at 4 (emphasis in original). The Government has not cited to any legal authority or language in the order of removal that "requires" Herrera-Quino's deportation immediately or prior to trial. *See id.* at 8–9.

Executive Branch wants to prioritize deportation over prosecution, that is its prerogative.

IV. **CONCLUSION**

This Court holds that under the unique circumstances of this case—where the Government has already consented to Herrera-Quino's release and has not presented any evidence of his risk of flight beyond his immigration status—ICE's decision to deport a defendant, without more, is an insufficient basis to deny him bail. As a result, Herrera-Quino's motion to reinstate the October 25, 2023 Release Order is **GRANTED**.

HON. JOSE R. ALMONTE
UNITED STATES MAGISTRATE JUDGE

Dated: February 1, 2024